IN THE UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

| | | |
|---|---|---|
| **SHERLINE JEAN-LOUIS,** | § | |
| | § | |
| Plaintiff, | § | |
| | § | |
| v. | § | Civil Action No. **3:22-CV-1037-L** |
| | § | |
| **AMERIFINANCIAL SOLUTIONS,** | § | |
| **LLC,** | § | |
| | § | |
| Defendant. | § | |

**MEMORANDUM OPINION AND ORDER**

Before the court is Defendant's Motion for Summary Judgment ("Motion") (Doc. 25), filed April 14, 2024. For the reasons herein explained, the court **grants** Defendant's Motion for Summary Judgment (Doc. 13) and **dismisses without prejudice** this action for lack of jurisdiction.

**I.     Factual and Procedural Background**

On May 9, 2022, Plaintiff Sherline Jean-Louis ("Plaintiff" or Ms. Jean-Louis) brought this action against Amerifinancial Solutions, LLC ("Defendant" or "AFS") for alleged violations of the Federal Debt Collection Practices Act ("FDCPA") (Count I) and the Texas Debt Collection Act ("TDCA") (Count II) in connection with AFS's allegedly unfair debt collection practices involving a single letter that was mailed to Ms. Jean-Louis at her brother's address in Florida, who in turn provided the letter to Ms. Jean-Louis, who resided in Texas.  According to Plaintiff's Complaint, AFS violated section 1692e(2) and (10) of the FDCPA because "it was deceptive for [it] to represent that it could collect the subject debt when it knew or should have known that Plaintiff did not owe the subject debt and that she disputed it." Pl.'s Compl. 4.  Plaintiff alleges that this conduct by AFS only served to "worry and confuse" her. *Id.*  Plaintiff further alleges that AFS violated section 1692f by using unfair means in attempting to collect the debt from her. *Id.*

**Memorandum Opinion and Order - Page 1**

at 5.  In support of both state and federal claims, Plaintiff alleges that she "has incurred costs and expenses consulting with and retaining her attorney as a result of Defendant's conduct," and she "has suffered concrete harm due to Defendant[']s conduct, including but not limited to, aggravation, invasion of privacy, and emotional distress." *Id.* at 3.

AFS moved for summary judgment on both claims on April 15, 2024, contending that Plaintiff lacks standing to assert the claims. Alternatively, AFS contends that such claims fail as a matter of law because the undisputed evidence in this case is insufficient to show that AFS's conduct violated either statute.  The Motion became ripe on June 3, 2024, when AFS filed its reply brief.

AFS raises a number of arguments in its Motion.  While the Motion focuses on Plaintiff's FDCPA claim, Defendant asserts that the same reasoning applies in all respect to her TDCA claim. Plaintiff's summary judgment response similarly focuses on her FDCPA claim without specifically mentioning the TDCA, but she asserts that she has standing to pursue both of "her claims" based on her injury-in-fact arguments and evidence applicable to her FDCPA claim.  Pl.'s Resp. 3.

The court determines that Defendant's argument that Plaintiff lacks standing to sue under the FDCPA and TDCA is dispositive of the Motion as it pertains to these claims.  The court's analysis, therefore, focuses on Defendant's standing argument, which in any event must be addressed before reaching the parties' merits-based arguments because it affects the court's authority to exercise jurisdiction over the debt collection claims asserted by Plaintiff in this action.

## II.    Summary Judgment Standard

Summary judgment shall be granted when the record shows that there is no genuine dispute as to any material fact and that the moving party is entitled to judgment as a matter of law. Fed. R.

**Memorandum Opinion and Order - Page 2**

Civ. P. 56(a); *Celotex Corp. v. Catrett*, 477 U.S. 317, 323-25 (1986); *Ragas v. Tennessee Gas Pipeline Co.*, 136 F.3d 455, 458 (5th Cir. 1998). A dispute regarding a material fact is "genuine" if the evidence is such that a reasonable jury could return a verdict in favor of the nonmoving party. *Anderson v. Liberty Mutual Lobby, Inc.*, 477 U.S. 242, 248 (1986). When ruling on a motion for summary judgment, the court is required to view all facts and inferences in the light most favorable to the nonmoving party and resolve all disputed facts in favor of the nonmoving party. *Boudreaux v. Swift Transp. Co., Inc.*, 402 F.3d 536, 540 (5th Cir. 2005). Further, a court "may not make credibility determinations or weigh the evidence" in ruling on a motion for summary judgment. *Reeves v. Sanderson Plumbing Prods., Inc.*, 530 U.S. 133, 150 (2000); *Anderson*, 477 U.S. at 254-55.

Once the moving party has made an initial showing that there is no evidence to support the nonmoving party's case, the party opposing the motion must come forward with competent summary judgment evidence of the existence of a genuine dispute of material fact. *Matsushita Elec. Indus. Co. v. Zenith Radio*, 475 U.S. 574, 586 (1986). On the other hand, "if the movant bears the burden of proof on an issue, either because he is the plaintiff or as a defendant he is asserting an affirmative defense, he must establish beyond peradventure *all* of the essential elements of the claim or defense to warrant judgment in his favor." *Fontenot v. Upjohn Co.*, 780 F.2d 1190, 1194 (5th Cir. 1986) (emphasis in original). "[When] the record taken as a whole could not lead a rational trier of fact to find for the nonmoving party, there is no 'genuine [dispute] for trial.'" *Matsushita*, 475 U.S. at 587 (citation omitted). Mere conclusory allegations are not competent summary judgment evidence, and thus are insufficient to defeat a motion for summary judgment. *Eason v. Thaler*, 73 F.3d 1322, 1325 (5th Cir. 1996). Unsubstantiated assertions,

improbable inferences, and unsupported speculation are not competent summary judgment evidence. *See Forsyth v. Barr*, 19 F.3d 1527, 1533 (5th Cir. 1994).

The party opposing summary judgment is required to identify specific evidence in the record and to articulate the precise manner in which that evidence supports his or her claim. *Ragas*, 136 F.3d at 458. Rule 56 does not impose a duty on the court to "sift through the record in search of evidence" to support the nonmovant's opposition to the motion for summary judgment. *Id*.; *see also Skotak v. Tenneco Resins, Inc.*, 953 F.2d 909, 915-16 & n.7 (5th Cir. 1992). "Only disputes over facts that might affect the outcome of the suit under the governing laws will properly preclude the entry of summary judgment." *Anderson*, 477 U.S. at 248. Disputed fact issues that are "irrelevant and unnecessary" will not be considered by a court in ruling on a summary judgment motion. *Id*. If the nonmoving party fails to make a showing sufficient to establish the existence of an element essential to its case and on which it will bear the burden of proof at trial, summary judgment must be granted. *Celotex*, 477 U.S. at 322-23.

## III.    Article III Standing

### A.  The Parties' Arguments

Based on *Perez v. McCreary, Veselka, Bragg & Allen, P.C.*, 45 F. 4th 816 (5th Cir. 2022), Defendant argues that Plaintiff lacks standing to pursue her claims because she cannot show that she suffered a concrete injury, that intangible injuries are insufficient to confer standing, and the one collection letter at issue here is legally and factually insufficient to show that she suffered a concrete injury.

Relying on two unreported cases out of the Northern District of Illinois, Plaintiff responds that she has standing to pursue her claims because she lost time and income as a result of Defendant's conduct, which she argues is sufficient to establish a concrete injury:

> Defendant has clearly overlooked and failed to consider the tangible injuries suffered by Plaintiff as a result of Defendant's conduct, which are sufficient to confer Article III standing. Defendant's general belief that a single collection letter cannot confer Article III standing is without merit.
>
> . . .
>
> Plaintiff's lost time from her self-employment, and corresponding lost income as a result of such lost time, constitute tangible injuries sufficient to confer Article III standing. *See e.g., Velez v. Absolute Resolutions Invs.*, LLC, 2022 U.S. Dist. LEXIS 197455, at *7-8 (N.D. Ill. Oct. 31, 2022) (finding uncontroverted testimony regarding lost time and income for self-employed plaintiff constituted a concrete injury in fact at the summary judgment stage) (quoting *Brown v. Weltman v. Weinberg & Reis Co., L.P.A*., 2021 U.S. Dist. LEXIS 166287, at *2 (N.D. Ill. Sept. 1, 2021) ("It is a reasonable and plausible inference . . . that [plaintiff] actually lost money – income she otherwise would have earned from self-employment—as a result of her receipt of [defendant's] collection letter. This economic harm differentiates [plaintiff's] case from the intangible harm in the cases relied upon by [defendant] and suffices as an allegation of concrete injury for purposes of Article III standing")). As such, the [c]ourt should find that Defendant's conduct and violations of law in sending a collection letter to Plaintiff which falsely suggested she owed a debt which she did not caused [her] tangible injuries sufficient to constitute a concrete injury in fact.

Pl.'s Resp. 3-4.  In addition, Plaintiff asserts that she has suffered injuries in the form of emotional distress.

In her "Statement of Undisputed Material Facts," Plaintiff asserts that her deposition testimony establishes the following:

> Plaintiff is self-employed. Pla. App. 2, 9. Plaintiff expended significant time addressing the situation created by Defendant's collection letter. *Id.* at 6-7, 10. Plaintiff in turn lost out on income from her self-employment due to the time devoted to addressing Defendant's conduct. *Id.* at 10-11. Defendant's conduct further caused Plaintiff emotional distress. *Id.* at 6.

Pl.'s Resp. 3.

Plaintiff, therefore, argues that "the varying tangible injuries suffered by [her] constitute concrete injuries for purposes of the Article III standing analysis, and the [c]ourt should find that [she] has sufficiently established such tangible injuries." *Id.* at 5.

**Memorandum Opinion and Order - Page 5**

Defendant counters that Plaintiff's citations to non-binding authority from another circuit to support her argument regarding lost time are unavailing because the Fifth Circuit in *Perez* rejected a similar lost time argument. In addition, Defendant contends that Plaintiff's evidence does not support her assertion regarding lost income:

> Plaintiff contends that she "lost out on income from her self-employment due to the time devoted to addressing Defendant's conduct." Doc. 31, pg. 3. However, there is no evidence in the record that Plaintiff lost any income. When asked what costs or expenses she has incurred, Plaintiff responded "My time." Pla. App. 6. When asked what it took away from her employment, she responded that [] "[i]t took time away." Pla. App. 10. There is no evidence showing what, if any income, Plaintiff lost as a result of AFS's actions. Plaintiff's only evidence is that she lost time. Furthermore, there is no evidence that Plaintiff incurred any costs or paid [] [her] attorney[] any money. As *Perez* stated, "[a]bsent an allegation that Perez paid her attorney for the consultation, we must assume that her purported injury is solely lost time." *Perez*, at 825. As stated above, lost time alone is insufficient for standing. *Id.*

Def.'s Reply 2.

## B. Discussion

The standing doctrine addresses the question of who may properly bring suit in federal court and "is an essential and unchanging part of the case-or-controversy requirement of Article III." *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560 (1992). To establish Article III standing, the plaintiff has the burden of establishing three elements:

> First, the plaintiff must have suffered an "injury in fact"—an invasion of a legally protected interest which is (a) concrete and particularized, and (b) "actual or imminent, not 'conjectural' or 'hypothetical[.]'" Second, there must be a causal connection between the injury and the conduct complained of—the injury has to be "fairly . . . trace[able] to the challenged action of the defendant, and not . . . th[e] result [of] the independent action of some third party not before the court." Third, it must be "likely," as opposed to merely "speculative," that the injury will be "redressed by a favorable decision."

*Id.* at 560-61; *Spokeo, Inc. v. Robins*, 578 U.S. 330, 338 (2016) (the plaintiff must demonstrate that he or she "(1) suffered an injury in fact, (2) that is fairly traceable to the challenged conduct of the defendant, and (3) that is likely to be redressed by a favorable judicial decision.").

"[E]ach element [of standing] must be supported in the same way as any other matter on which the plaintiff bears the burden of proof, *i.e.*, with the manner and degree of evidence required at the successive stages of the litigation." *Lujan*, 504 U.S. at 561.  "At earlier stages of litigation . . . the manner and degree of evidence required to show standing is less than at later stages." *Speech First, Inc. v. Fenves*, 979 F.3d 319, 329 (5th Cir. 2020), *as revised* (Oct. 30, 2020) (citing *Lujan*, 504 U.S. at 561).  "At the pleading stage, general factual allegations of injury resulting from the defendant's conduct may suffice, for on a motion to dismiss" courts "presum[e] that general allegations embrace those specific facts that are necessary to support the claim. . . . In response to a summary judgment motion, however, the plaintiff can no longer rest on such 'mere allegations,' but must 'set forth' by affidavit or other evidence [admissible under Rule 56] 'specific facts.'" *Id.* (citations omitted).

The parties' standing arguments in this case focus on whether Ms. Jean-Louis suffered an injury in fact. "To establish injury in fact, a plaintiff must show that he or she suffered 'an invasion of a legally protected interest' that is 'concrete and particularized' and 'actual or imminent, not conjectural or hypothetical.'" *Spokeo, Inc.*, 578 U.S. at 339 (quoting *Lujan*, 504 U.S. at 560).  A "bare procedural violation" of a statute does not satisfy Article III's requirement that there be an injury in fact.  *Perez*, 45 F.4th at 823 (quoting *Spokeo*, *Inc.*, 578 U.S. at 341).  This is so because the "[d]eprivation of a procedural right without some concrete interest that is affected by the deprivation . . . is insufficient to create Article III standing." *Perez*, 45 F.4th at 823-24 (quoting

*Spokeo*, *Inc.*, 578 U.S. at 341).  Thus, "Article III standing requires a concrete injury even in the context of a statutory violation." *Perez*, 45 F.4th at 823 (quoting *Spokeo*, *Inc.*, 578 U.S. at 341).

To be concrete, the injury must be "real, and not abstract." *TransUnion LLC v. Ramirez*, 594 U.S. 413, 424 (2021) (quoting *Spokeo, Inc.*, 578 U.S. at 340).  A plaintiff has standing only when the injury inflicted has a "'close relationship' to a harm traditionally recognized as providing a basis for a lawsuit in American courts." *Perez*, 45 F.4th at 820 (quoting *TransUnion*, 594 U.S. 432).  In the absence of such a showing by the plaintiff, the case must be dismissed for want of jurisdiction.  *See id*. at 826.

### 1.  Injury Based on Lost Time

Here, Plaintiff first contends that the "lost time from her self-employment, and [her] corresponding lost income as a result of such lost time" constitute a concrete, tangible, monetary injury sufficient to confer Article III standing.  Pl.'s Resp. 3.

Plaintiff appears to recognize that she can no longer rely on her pleadings in responding to Defendant's standing argument because she points to her deposition testimony in an effort to show that she suffered an injury in fact.  The *Brown* case she relies on, however, involved the issue of standing that was raised early on in the case at the Rule 12(b)(6) pleading stage, not the summary judgment stage. *See Brown v. Weltman, Weinberg & Reis Co., L.P.A.*, No. 21 C 1120, 2021 WL 3910748, at *1-2 (N.D. Ill. Sept. 1, 2021).  The other case relied on by Plaintiff involved the issue of standing that was raised at the summary judgment stage.  *See Velez v. Absolute Resolutions Invs., LLC*, No. 21 C 3912, 2022 WL 16553140, at *1-2 (N.D. Ill. Oct. 31, 2022).  While *Velez* was a summary judgment case, it cites and quotes *Brown* in concluding that the plaintiff established standing to survive summary judgment.  Even so, the court in *Velez* did not simply conclude based on the allegations in the plaintiff's complaint that he had satisfied Article III's injury-in-fact

**Memorandum Opinion and Order - Page 8**

requirement.  The *Velez* court reached this conclusion because the plaintiff testified that he had suffered a financial loss.  *Id.* at 4. Specifically, the plaintiff in *Velez* testified that the stress caused him to refuse freelance work that he ordinarily would have performed, and the defendants did "not substantively challenge Velez's testimony about his financial loss."  *Id.*

Unlike the plaintiff in *Velez*, Ms. Jean-Louis has not come forward with any evidence of financial loss or lost income resulting from AFS's conduct. Instead, when asked in her deposition—"What costs have you incurred" as a result of Defendant's conduct in relation to your allegation that you "incurred costs and expenses consulting with an retaining an attorney"?— Plaintiff stated, "My time. My time. . . . My time.  The legwork that I had to do, the research that I had to do to figure out  . . . how do I resolve this[.] . . . It caused me time[.]"  Pl.'s App. 6.

Plaintiff also testified that it "took me time, it took me hours" to get someone to talk to her on the phone.  *Id.* at 7.  Plaintiff was asked in her deposition—"[W]hat expenses have you incurred as it relates to this [the time you spent in this regard]"?—but her summary judgment appendix does not include her response to this question.  *Id.*

Even in response to later questions by her own attorney, Plaintiff and her counsel continued to focus on the time she spent dealing with the situation presented rather than the income she contends in her summary judgment response that she lost:

> Q.      Now, you had mentioned—when Mr. Aust was asking you about your job, . . . that you are self-employed. Is that correct?
>
> A.      Right.
>
> Q.      Okay. And do you believe that the time that you spent addressing these issues with AFS and all the related actions that you took, did that take away from your employment time that you would have spent on your job?
>
> A.      Yeah.  It did. It took time away.

*Id.* at 9-10.

**Memorandum Opinion and Order - Page 9**

Based on *Brown* and *Velez*, Plaintiff contends that her testimony about losing time from her self-employment supports the reasonable and plausible inference that she also "lost income as a result of such time." Pl.'s Resp. 3.  At the pleading stage, allegations such as this *might* have been sufficient to support such an inference.[1]  At the summary judgment stage, however, Plaintiff's evidence regarding lost time, on one hand, and her being self-employed, on other hand, are insufficient to show that she "lost income," and to conclude otherwise would require the court to speculate, which it cannot do.  *See Forsyth*, 19 F.3d at 1533.

Moreover, as Defendant correctly pointed out in its Motion, the Fifth Circuit in *Perez* held that a similar time-based injury alone was insufficient to establish injury in fact:

> Perez says the time she wasted by consulting with her lawyer after receiving the letter qualifies as a concrete injury. Absent an allegation that Perez paid her attorney anything for the consultation, we must assume that her purported injury is solely lost time.
>
> Perez doesn't offer a common-law analog to the time-based injury she claims to have suffered. In other words, she has not met her "burden [to] demonstrate[e] that [she has] standing" based on that theory. *TransUnion*, 141 S. Ct. at 2207. After all, how can we decide whether two harms have a "close relationship" if we don't know what one of them is? *Id.* at 2200 (quotation omitted). It is not our job to "conjure up possible theories" that could carry a litigant's burden. *Raley v. Hyundai Motor Co.*, 642 F.3d 1271, 1275 (10th Cir. 2011).

*Perez*, 45 F.4th at 825.  While it stopped short of holding that time-based injuries could ever satisfy Article III's concrete harm requirement, the Fifth Circuit concluded that Perez had not carried her burden of showing that a time-based injury could sustain her claims, and it expressed skepticism "that a time-based injury alone could qualify as a concrete injury." *Id.* (citation omitted).

---

[1] Plaintiff did not previously plead that she lost time and income from her self-employment as a result of Defendant's conduct.  Plaintiff's allegations regarding incurred costs were instead limited to her allegation that she spent time consulting with and retaining an attorney. *See* Pl.'s Compl. 4.  Thus, Plaintiff's argument that she lost time and income from her self-employment as a result of Defendant's conduct is a theory of injury that is outside her pleadings and was raised for the first time in her response to Defendant's summary judgment motion.

The same reasoning applies here. Absent evidence that Ms. Jean-Louis paid her attorney anything for the consultation, or evidence that she suffered financial loss because of the time she spent that otherwise would have been dedicated to income-generating work, the undersigned, as in *Perez*, at most can only reasonably infer that her only injury is that of lost time, which is insufficient at this stage of the litigation to establish a concrete injury as needed for Article III standing. *See id.*; *see also Pierre v. Midland Credit Mgmt., Inc.*, 29 F.4th 934, 939 (7th Cir. 2022) ("Pierre's response to the letter was to call Midland Credit to dispute the debt and to contact a lawyer for legal advice. These are not legally cognizable harms. Making a call to a debt collector is not closely related to an injury that our legal tradition recognizes as providing a basis for a lawsuit. Nor is seeking legal advice. . . . Indeed, the concreteness requirement would be an empty one if all it took was contacting a lawyer and filing suit") (citations omitted).

## 2.  Injury Based on Emotional Distress

Plaintiff argues in the alternative that her evidence of emotional distress is sufficient to satisfy Article III's injury-in-fact requirement.

In *TransUnion*, the Supreme Court left open the question of whether "emotional or psychological harm could suffice for Article III purposes—for example, by analogy to the tort of intentional infliction of emotional distress." *TransUnion LLC*, 594 U.S. at 436 n.7. Before *TransUnion*, it was common for courts, including those in this circuit, to find that evidence of emotional stress was enough to establish a concrete injury for purposes of constitutional standing. *See Vazzano v. Receivable Mgmt. Servs., LLC*, 621 F. Supp. 3d 700, 706-10 (N.D. Tex. 2022) (citing cases).  After *TransUnion*, courts have questioned whether some types of emotional harm such as confusion, worry, frustration, anxiety, and stress are sufficient for standing purposes. *See id*. (citing cases that have applied *TransUnion*'s analysis and concluded that such harms do not

have a "close relationship" to intentional or negligent infliction of emotional distress under common law).

In *Perez*, the Fifth Circuit acknowledged that injuries post-*TransUnion* are concrete only if they bear a "'close relationship' to injuries that courts have traditionally recognized as concrete," but it went on to note that the Supreme Court in *TransUnion* "did not provide an exact formulation for determining how close is close enough." *Perez*, 45 F.4th at 822. Based on the reasoning in a prior Seventh Circuit opinion by then-Judge Amy Coney Barrett, the Fifth Circuit in *Perez* concluded that courts should "look for a "'close relationship' in kind, not degree." *Id.* (quoting in *Gadelhak v. AT&T Servs. Inc.*, 950 F.3d 458, 462 (7th Cir. 2020)). Following the Seventh Circuit's lead, the Fifth Circuit and other circuits have recognized that courts must "focus[] on types of harms protected at common law, not the precise point at which those harms become actionable" under common law. *Perez*, 45 F.4th at 822 (citations and footnote omitted). Consequently, the Fifth Circuit in *Perez* concluded that:

> [A] plaintiff doesn't need to demonstrate that the level of harm he has suffered would be actionable under a similar, common-law cause of action. But he [or she] does need to show that the type of harm he[] [or she has] suffered is similar in kind to a type of harm that the common law has recognized as actionable. If he [or she] can't do that, he [or she] hasn't suffered a concrete injury and doesn't have standing to bring suit.

*Id.*

Here, Plaintiff's entire argument with respect to standing and emotional distress is as follows:

> Although the [c]ourt need not consider any additional evidence of Plaintiff's tangible injuries in the context of the Article III standing analysis, courts within the Fifth Circuit have found that emotional distress damages—like the kind to which Plaintiff testified—are sufficient to confer Article III standing. *Hussein v. Nat'l Credit Sys., Inc.*, 2023 U.S. Dist. LEXIS 138277, at *16 (S.D. Tex. Aug. 8, 2023) ("[Plaintiff] asserted emotional distress damages, which have been held sufficient to confer Article III standing").

Pl.'s Resp. 4-5.  This conclusory argument does not assist the court.  It does not explain why Plaintiff believes that her evidence of emotional distress satisfies *TransUnion*'s "close relationship" test and offers no analysis of any kind or citations to evidence.  While Plaintiff cites legal authority, the only case cited, *Hussein*, is readily distinguishable.

In *Hussein*, the defendant moved to dismiss for lack of standing early in the case at the motion to dismiss stage, not the summary judgment stage. *See Hussein v. National Credit Sys., Inc.*, No. CV H-22-4466, 2023 WL 5054181, at *1 (S.D. Tex. Aug. 8, 2023). Additionally, although the defendant in *Hussein* moved to dismiss for lack of standing, the case itself does not contain the quoted language or any discussion regarding Article III standing or emotional distress damages being sufficient for Article III standing.  Instead, most of the court's opinion in *Hussein* is dedicated to the issue of whether the defendant was entitled to attorney's fees because, after the defendant moved to dismiss under Rules 12(b)(6) and 12(b)(1), the plaintiff filed a motion to voluntarily dismiss the action, and the defendant moved to recover attorney's fees.  *See id.* at *2-7.

The Fifth Circuit has not addressed whether emotional harm, generally or the particular type of emotional harm at issue in this case, is sufficient post-*TransUnion* to establish a concrete injury.  Like this case, *Perez* dealt with the issue of standing with respect to a claim under the FDCPA, but it did not involve allegations of emotional harm. The Fifth Circuit's discussion regarding certain injuries alleged by Perez—a statutory violation in the form of an unwanted letter and a related injury similar to the tort of intrusion on seclusion—is, nevertheless, instructive. Based on the reasoning in *TransUnion*, the Fifth Circuit concluded that a bare statutory or procedural violation is not evidence of a concrete injury because "Article III standing requires a concrete injury even in the context of a statutory violation." *Perez*, 45 F.4th at 823 (quoting *TransUnion*,

594 U.S. at 426) ("Importantly, this Court has rejected the proposition that 'a plaintiff automatically satisfies the injury-in-fact requirement whenever a statute grants a person a statutory right and purports to authorize that person to sue to vindicate that right.'") (quoting *Spokeo*, 578 U.S. at 341).

In responding to Defendant's standing and merits-based arguments, Plaintiff relies solely on her claim under section 1692e of the FDCPA and the single letter sent by AFS.[2] The court's remaining standing analysis, therefore, focuses on this. To the extent that Ms. Jean-Louis argues that AFS's single letter is sufficient without more to establish standing to sue under the FDCPA, it fails for the reasons expressed in *Perez* and *TransUnion* regarding the inadequacy of bare procedural violations. *See id.*

Regarding Defendant's argument that a single letter is insufficient to confer standing under the FDCPA, Plaintiff merely responds that "Defendant's general belief that a single collection letter cannot confer Article III standing is without merit." Pl.'s Resp. 3. Plaintiff, however, does

---

[2] Plaintiff mentions in her "Statement of Undisputed Material Facts" that she telephoned AFS after receiving the letter. Plaintiff, however, never explains in responding to Defendant's Motion and summary judgment arguments how this telephone call supports her standing or merits-based arguments. In addition, Plaintiff's response contains no references to her claim under section 1692f. Thus, neither Plaintiff's FDCPA claim under section 1692f nor the telephone call initiated by her supports a determination that she has standing. Even assuming that she has standing to pursue her FDCPA claim under section 1692e or 2692f, any claim or argument based on section 1692f and the telephone call has been abandoned. *See Vela v. City of Houston*, 276 F.3d 659, 679 (5th Cir. 2001) (concluding that the plaintiff's failure to defend a claim in response to a summary judgment motion constituted abandonment of the claim). Generally, issues not adequately briefed are also waived. *Sindhi v. Raina*, 905 F.3d 327, 334 (5th Cir. 2018) (citing *United States v. Martinez*, 263 F.3d 436, 438 (5th Cir. 2001) ("[A] [party] waives an issue if he fails to adequately brief it."); *United States v. Stalnaker*, 571 F.3d 428, 439-40 (5th Cir. 2009) (holding that the defendant's failure to explain her assertions or provide citations to the record or relevant law constituted waiver for failure to adequately brief); *Nichols v. Enterasys Networks, Inc.*, 495 F.3d 185, 190 (5th Cir. 2007) ("Mr. Nichols has failed to provide any evidence—or any legal argument beyond bare assertions—as to how the terms are unconscionable under Texas law. Whe[n] analysis is so deficient, this court has considered the issue waived for inadequate briefing.") (citing *Burnley v. City of San Antonio*, 470 F.3d 189, 200 n.10 (5th Cir. 2006)). While the "issues-not-[adequately] briefed-are-waived rule" in these cases derives from the Federal Appellate Rules of Procedure, Local Civil Rule 7.1 similarly requires motions and responses to be "accompanied by a brief that sets forth the moving party's contentions of fact and/or law, and argument and authorities." L.R. 7.1(d); *see also* L.R. 56.1 ("Except as expressly modified, the motion practice prescribed by LR 7.1-7.3 is not affected by LR 56.2-56.7."). Accordingly, any standing or merits-based issue pertaining to section 1692f and the telephone call is waived.

not elaborate on this assertion. Moreover, this conclusory argument was made in connection with

her lost time argument, not her emotional harm argument.

Further, although courts before and after *TransUnion* have held that unwanted

communications could cause concrete injuries similar to intrusion upon seclusion or other privacy

torts, the Fifth Circuit in *Perez* reasoned that the plaintiff's receipt of a single, unwanted letter in

that case did not inflict a concrete injury and was insufficient to confer standing under section

1692e of the FDCPA because the focus of section 1692e is economic harm, not privacy concerns

or concerns regarding harassment:

> Congress didn't elevate the receipt of a single, unwanted message to the status of a
> legally cognizable injury in the FDCPA. Perez sued MVBA for violating the
> statute's antifraud provision. 15 U.S.C. § 1692e. Congress's concern in prohibiting
> "false, deceptive, or misleading representation[s] or means in connection with the
> collection of any debt" wasn't consumer privacy. It was the economic harms that
> consumers suffered due to aggressive and unfair attempts to collect their debts. *See*
> *id.* § 1692(a) (finding that "[a]busive debt collection practices contribute to the
> number of personal bankruptcies, to marital instability, [and] to the loss of jobs").
>
> Congress also expressed concern about "invasions of individual privacy."
> *Id.* § 1692(a). But it addressed those problems through a *different* section of the
> FDCPA: the statute's prohibition on harassment and abuse. *Id.* § 1692d. Perez
> hasn't sued MVBA based on that provision, so she can't bootstrap the harms it
> recognizes as actionable to demonstrate standing to sue based on a different
> provision.
>
> Anyway, the FDCPA's harassment provision doesn't recognize that a single
> unwanted message qualifies as a concrete harm. Instead, its closest analog to an
> unwanted letter—unwanted telephone calls—must be made "repeatedly or
> continuously." 15 U.S.C. § 1692d(5). Its general prohibition on actions that "harass,
> oppress, or abuse" a debtor carries the same connotation. *Id.* § 1692d. Accordingly,
> even if Congress could elevate a single unwanted message to the status of a concrete
> injury, it hasn't done so here. Perez does not have standing to bring her suit for
> damages.

*Perez*, 45 F.4th at 826 (footnote and citations omitted).

Like the plaintiff in *Perez*, Ms. Jean-Louis has sued under section 1692e of the FDCPA,

but she contends that she suffered emotional rather than economic harm as a result of receiving a

single, unwanted letter from AFS.  The same reasoning in *Perez*, therefore, applies and precludes

a finding that the letter constitutes a concrete harm for purposes of section 1692e.  *See id.*

Moreover, Plaintiff does not point to any evidence that she suffered emotional harm as

required for standing to pursue a claim under section 1692e.  As indicated, the only reference to

emotional harm in Plaintiff's response appears in her "Statement of Undisputed Material Facts"

wherein she asserts in conclusory fashion that "Defendant's conduct further caused [her] emotional

distress."  Pl.'s Resp. 3.  For support, Plaintiff relies on page 6 of her appendix, which includes

her deposition testimony about the letter from AFS and contains a single reference by her to

"emotional distress":

> Q.      Paragraph 19 [of your Complaint] says, "Plaintiff has incurred costs
> and expenses consulting with and retaining her attorney as a result of defendant's
> contact [sic]." What costs have you incurred?
>
> A.      My time. My time.
>
> Q.      Okay.
>
> A.      My time. The legwork that I had to do, the research that I had to do
> to figure out, okay, how do I resolve this? Because this company is not trying to
> resolve this. And I knew once it was one that was attaching my name, it was going
> to have a domino effect, and which it did, it did. **It caused me time and emotional
> distress**. **I was at the lowest point of my life.** That's not what I should be thinking
> about and—and trying to figure out, you know, what is happening with somebody
> else's debt. Like if it was mine, then that's something completely different; I
> incurred it, I did it, then I need to take responsibility. But that's not what was
> happening here. So I knew—I wasn't sure—is this fraud? Is somebody using my
> information? If that's the case, then this could be a bigger problem if I don't resolve
> it right away. I had to do research. I had to be on the phone calling.

Pl.'s App. 6-7.

Even assuming that emotional harm of some kind can suffice for Article III purposes—for

example, by analogy to the torts of negligent or intentional infliction of emotional distress, the

foregoing deposition testimony relied on by Plaintiff is still insufficient post-*TransUnion* to

**Memorandum Opinion and Order - Page 16**

support a determination that she suffered a concrete injury. *See Pierre*, 29 F.4th at 939 ("[The plaintiff] further testified that she experienced emotional distress arising from her concern about being sued for the debt [in response to receiving a debt collection letter]. But worry, like confusion, is insufficient to confer standing in this [FDCPA] context [at the summary judgment stage.") (citations omitted). Ms. Jean-Louis's testimony regarding the nature of the emotional harm she experienced is too conclusory and not the type recognized in common law as supporting a claim for either negligent or intentional infliction of emotional distress under state or federal law.[3] Even Plaintiff's pleadings describe such emotional harm as worry and confusion that the Seventh Circuit in *Pierre* held to be insufficient.  Pl.'s Compl. 4.  Accordingly, Plaintiff's evidence is insufficient to show that the type of emotional harm she experienced has a "close relationship" to the type of harm traditionally recognized in common law as providing a basis for claims of negligent or intentional infliction of emotional distress.  *See TransUnion*, 594 U.S. at 425.

As Plaintiff has failed to demonstrate that she has suffered an injury in fact as required for Article III standing to sue under the FDCPA, the court lacks jurisdiction to entertain this claim. Having determined that dismissal is warranted on this ground, the court need not address Defendant's other grounds for summary judgment.  Further, as the parties acknowledge that the same reasoning applies in all respects to Plaintiff's TDCA claim, the court's ruling as to Plaintiff's FDCPA claim applies equally to her TDCA claim.

---

[3] For federal claims involving emotional harms, "a claim related to emotional distress requires a 'degree of specificity' and 'must be supported by evidence of genuine injury,' such as 'the observations of others,' 'corroborating testimony,' or 'medical or psychological evidence.'" *Bacharach v. SunTrust Mortg., Inc.*, 827 F.3d 432, 436 (5th Cir. 2016) (quoting *Cousin v. Trans Union Corp.*, 246 F.3d 359, 371 (5th Cir. 2001)); *Vadie v. Mississippi State Univ.*, 218 F.3d 365, 376-78 (5th Cir. 2000). The plaintiff must "present specific evidence of emotional damage," in other words, "[t]here must be a specific discernable injury to the claimant's emotional state, proven with evidence regarding the nature and extent of the harm." *Hitt v. Connell*, 301 F.3d 240, 250 (5th Cir. 2002) (emphasis in original) (internal quotations and citations omitted). Under Texas law, the plaintiff must show she suffered more than "mere worry, anxiety, vexation, embarrassment, or anger." *Regan v. Lee*, 879 S.W.2d 133, 136 (Tex. App.—Houston [14th Dist.] 1994, no writ).

## IV.    Conclusion

For the reasons explained, the court **grants** Defendant's Motion for Summary Judgment (Doc. 25) with respect to its Article III standing argument; and **dismisses without prejudice** Plaintiff's claims under the FDCPA and TDCA for want of jurisdiction. As the court lacks jurisdiction over Plaintiff's claims, it expresses no opinion regarding the parties' remaining merits-based summary judgment arguments.

**It is so ordered** this 23rd day of July, 2024.

Sam A. Lindsay
United States District Judge

**Memorandum Opinion and Order - Page 18**